**Bonnie M. KERZER, Plaintiff–Appellant,**

v.

**KINGLY MANUFACTURING,**
**Defendant–Appellee.**

No. 98–7014.

United States Court of Appeals,
Second Circuit.

Argued July 17, 1998.

Decided Sept. 23, 1998.

Before: WINTER, Chief Judge, DORSEY * and JONES,** District Judges.***

JONES, District Judge:

Plaintiff Bonnie M. Kerzer appeals from a grant of summary judgment entered in the United States District Court for the Southern District of New York, (Haight, J.), against her on her claim of employment discrimination based on pregnancy, brought pursuant to the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k).

Reversed and remanded.

## BACKGROUND

Kingly Manufacturing ("Kingly") is a clothing wholesaler located in Manhattan engaged primarily in the sale of women's house coats and sleepwear. In July 1990, Kingly hired James Folkoff ("Folkoff") to establish a women's sportswear division at Kingly. On Folkoff's recommendation, Kingly also hired Kerzer in July 1990 to work as a clothing designer in the sportswear division. Sometime thereafter, and also on Folkoff's recommendation, Kingly hired Zenaida DeLeon ("DeLeon") to work as a pattern maker in the sportswear division. Kerzer, Folkoff, and DeLeon formerly worked together at Colonial Corporation, a now defunct clothing wholesaler.

Kingly's sportswear division services two clients, the GAP and Target Stores ("Target"). According to Kerzer, although her position at Kingly was that of "designer," she had additional responsibilities and performed different services for the GAP and Target. With respect to the GAP, Kerzer claims she performed product development, including researching and developing fabrics, embroideries, and trims, and ensuring the accuracy of prints, colors, specifications, and garment construction. With respect to both customers, Kerzer claims she performed duties related to sales, including, *inter alia*, meeting

Stephen A. Agus, Agus & Partners, P.C., New York City (Marcy J. Melnikoff, of counsel), for Plaintiff–Appellant.

Susan T. Kluewer, Reisman, Peirez, Reisman & Calcia, L.L.P., Garden City, NY (Jerome Reisman, of counsel), for Defendant Appellee.

* The Honorable Peter C. Dorsey, of the United States District Court for the District of Connecticut, sitting by designation.

** The Honorable Barbara S. Jones, of the United States District Court for the Southern District of New York, sitting by designation.

*** Pursuant to 28 U.S.C. § 46(b) and an order of the Chief Judge of this Court certifying a judicial emergency, this case was heard by a panel consisting of the Chief Judge of this Court and two judges of the United States District Court sitting by designation.

with the clients and preparing presentation boards showing designs, concepts, trends, colors, and styles. Furthermore, at the direction of Arthur Mintz ("Mintz"), Kingly's president, Kerzer claims she prepared presentation boards for customers other than the GAP and Target, and for clothing lines outside the sportswear division, such as women's and children's sleep wear.

In or about June 1992, Kerzer informed Kingly that she was pregnant and would be taking maternity leave beginning in December 1992. On December 14, 1992, Kerzer began her maternity leave. On January 17, 1993, she gave birth. According to Kerzer, Folkoff called her about two weeks later to ask her to move her return date up to March 1, 1993, because there was much work that Kingly needed her to do. According to Kingly, March 1 had always been Kerzer's scheduled return date.

On February 25, 1993, Kerzer, who was physically able to return to work on March 1, called Kingly to confirm her return date. Later that day, Mintz returned Kerzer's call and told her she was fired. By letter dated March 2, 1993, Kingly confirmed that Kerzer's employment had been terminated and informed her that her health insurance would continue until March 31, 1993. Kingly also included a check for two weeks' severance pay with the letter.

On June 24, 1993, Kerzer filed a charge of pregnancy discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On September 30, 1994, the EEOC issued a right to sue letter. On December 27, 1994, Kerzer commenced the instant action claiming that Kingly discriminated against her on the basis of pregnancy in violation of the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), contained in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991.

In support of her allegation of pregnancy discrimination, Kerzer presents both direct and circumstantial evidence. Specifically, Kerzer states by affidavit that Mintz once said in late 1990 "that an employer could easily get away with [discharging a pregnant employee], by stating that the position was eliminated," Kerzer Aff. ¶ 35, and that in the summer of 1992, following her announcement that she was pregnant, "Mintz became downright unfriendly toward [her]," id. ¶ 38. Furthermore, Judith Badillo ("Badillo"), a former Kingly employee, states by affidavit that she once heard Mintz remark that Kerzer's pregnancy "was a sign that [Kerzer] 'was lazy.'" Badillo Aff. ¶ 37.

Moreover, Kerzer claims that Mintz informed her, in early December 1992, that when she returned to work after her maternity leave she would be trained on a Computer Aided Design ("CAD") system. Kerzer asserts, however, that shortly after her discharge, Kingly hired "another designer named Heather" who was assigned to Kerzer's former office and who used the CAD. The "Heather" to whom Kerzer refers is Heather Bahorsky ("Bahorsky"), an employee who began working at Kingly on a part-time basis in May or June 1993, and on a full-time basis in July 1993, approximately two to four months after Kerzer was fired. Bahorsky was not pregnant when Kingly hired her.[1] Badillo corroborates Kerzer's assertions and states that:

> Shortly after [Kerzer's] departure, a designer named Heather was hired by Kingly; they stated that her purpose was solely to design women's sleepwear; but she actually did design children's wear as well, and performed a number of other tasks previously performed by [Kerzer]. It was obvious that this person was hired to replace [Kerzer], even though Kingly made efforts to disguise this fact. Heather was put in [Kerzer's] former office.

See id. ¶ 8.

Kerzer further claims that Folkoff telephoned her at her home in early February 1993 and asked her to move her anticipated return date up because there was a high volume of work to be done at Kingly. She argues that this demonstrates that her services were still needed at Kingly. Kerzer also points to the fact that she was dismissed over the telephone shortly before her sched-

---

1. Although the record is silent on this matter, the parties do not dispute this fact.

uled return date and directly following her call to Kingly to confirm her return date. She contends that this casts doubt on Kingly's assertion that its decision to discharge her stemmed from a legitimate business purpose.

In defense, Kingly claims that it eliminated Kerzer's position because Kerzer's services were no longer required due to the fact that the sportswear division's two clients, the GAP and Target, designed their own garments. Kingly further claims that it did not replace Kerzer with Bahorsky or anyone else. In support of these assertions, Kingly submits affidavits from Mintz, Folkoff, Bahorsky, and other Kingly employees.

On August 28, 1996, Kingly filed a motion for summary judgment. The district court granted Kingly's motion holding that Kerzer failed to establish a *prima facie* case of pregnancy discrimination. Furthermore, the district court held that even if Kerzer had established a *prima facie* case, she had failed to demonstrate that Kingly's proffered reason for terminating her employment— namely, its realization during Kerzer's maternity leave that Kerzer's services were no longer required—was pretextual.

This appeal followed.

## DISCUSSION

### I

#### A. Summary Judgment

We review a district court's grant of summary judgment *de novo*. *See Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149 (2d Cir.1998). Summary judgment is inappropriate unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact, and the district court's task is limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.

*See Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223–24 (2d Cir.1994). In deciding such a motion, we, like the district court, must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Giano v. Senkowski*, 54 F.3d 1050, 1052 (2d Cir.1995). Conclusory allegations, conjecture, and speculation, however, are insufficient to create a genuine issue of fact. *See D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 2075, 141 L.Ed.2d 151 (1998). Furthermore, in an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment. *See Gallo*, 22 F.3d at 1224. We reverse a grant of summary judgment if there is any evidence in the record from which a jury could draw a reasonable inference in favor of the nonmoving party on a material fact, *i.e.*, a fact that might affect the outcome of the suit. *See Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir.1998).

#### B. Pregnancy Discrimination Act

Kerzer brought this action against Kingly for allegedly discriminating against her on the basis of pregnancy in violation of the PDA. The PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2(h) of this title shall be interpreted to permit otherwise." 42 U.S.C.2000e(k).

Because Kerzer alleges discriminatory treatment in violation of Title VII, the Court applies the three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v.*

*Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). Under this framework, the plaintiff first must establish, by a preponderance of the evidence, a *prima facie* case of discrimination. "A plaintiff can establish a *prima facie* case of pregnancy discrimination under Title VII by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee." *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824 *and Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94). Alternatively, a plaintiff may establish the fourth element of a *prima facie* case by demonstrating that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination. *See id.* (citing *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13 *and Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 104 (2d Cir.1989)); *see also Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994); *Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1155 (2d Cir.1993). A plaintiff's burden to establish a *prima facie* case of discrimination is *de minimis. See Hicks,* 509 U.S. at 506, 113 S.Ct. at 2746–47; *Fisher v. Vassar College,* 114 F.3d 1332, 1335, 1340 & n. 7 (2d Cir.1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998); *Quaratino,* 71 F.3d at 64, 65.

 If the plaintiff demonstrates a *prima facie* case, a presumption that the employer unlawfully discriminated against the employee is raised, *see Fisher,* 114 F.3d at 1335, and the burden of production then shifts to the employer "to articulate a legitimate, clear, specific and non-discriminatory reason for discharging the employee," *Quaratino,* 71 F.3d at 64 (citing *Gallo,* 22 F.3d at 1226). If the employer satisfies this burden, the presumption raised by the establishment of the prima facie case is rebutted, *see Fisher,* 114 F.3d at 1336, and the burden is then on the plaintiff to show by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination, *see Hicks,* 509 U.S. at 515, 113 S.Ct. at

2751–52; *Quaratino,* 71 F.3d at 64. An employer's reason for termination cannot be proved to be a pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." *Hicks,* 509 U.S. at 515, 113 S.Ct. at 2752; *see also Quaratino,* 71 F.3d at 64. In the summary judgment context, this means "that the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false *and* as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo,* 22 F.3d at 1225.

## II

### A. Proof of *Prima Facie* Case

 Both parties agree that for purposes of Kingly's summary judgment motion, Kerzer satisfied the first three elements of a *prima facie* case. The dispute thus revolves around the fourth element, *i.e.,* whether Kerzer proved that her position remained open and was ultimately filled by a nonpregnant employee, or, alternatively, whether her discharge occurred under circumstances giving rise to an inference of unlawful discrimination.

In granting summary judgment for Kingly, the district court concluded that Kerzer's evidence, consisting of her and Badillo's affidavits, was insufficient to establish a genuine issue of material fact as to whether Kerzer was replaced. This was error.

Kerzer's evidence in support of her claim pales in volume and comparison to the numerous Kingly affidavits, including those of Mintz, Folkoff, Bahorsky, and other Kingly personnel, stating that Kerzer was not replaced by Bahorsky. Nonetheless, after viewing the evidence in the light most favorable to plaintiff, as we are bound to do, we conclude that Kerzer's evidence is sufficient to enable a jury reasonably to find that Kingly replaced her with a nonpregnant employee.

As stated above, Kerzer and Badillo state in their affidavits that Kingly hired Bahorsky

after Kerzer was discharged, that Bahorsky operated the CAD system which Mintz had told Kerzer she would be trained on after her return from maternity leave, that Bahorsky, like Kerzer, designed children's wear, and that Bahorsky moved into Kerzer's old office. In and of itself, this evidence raises a triable issue of fact as to whether Kerzer was replaced.

Alternatively, Kerzer also submitted evidence from which a jury reasonably could conclude that Kerzer's discharge occurred under circumstances giving rise to an inference of discrimination.[2] First, Folkoff's alleged call in early February 1993 asking Kerzer to return to work earlier than scheduled because there was much work to be done at Kingly suggests that Kerzer's services were still needed. Likewise, Kerzer's dismissal over the telephone shortly before her scheduled return date and directly following her telephone call to Kingly to confirm her return date casts doubt on Kingly's contention that it decided to terminate Kerzer's employment because it realized that Kerzer's services were no longer needed. This evidence, combined with Mintz's alleged comments and alleged change in attitude toward Kerzer and the hiring of, and services performed by, Bahorsky, supports Kerzer's allegation that she was discharged under circumstances giving rise to an inference of discrimination.

In short, viewing the evidence in the light most favorable to Kerzer, we conclude, contrary to the district court, that Kerzer's evidence was sufficient to raise a genuine issue of material fact as to whether Kerzer was replaced by a nonpregnant employee and as to whether Kerzer's discharge occurred under circumstances giving rise to an inference of unlawful pregnancy discrimination. Accordingly, the district court erred in holding that Kerzer had failed to submit evidence from which a jury reasonably could find that Kerzer had established a *prima facie* case of pregnancy discrimination.

**2.** The district court did not consider this alternative means of establishing the fourth element of a *prima facie* case, presumably because the parties

### B. Kingly's Reason for Discharging Plaintiff

The district court further determined that even if Kerzer had established a *prima facie* case, summary judgment for Kingly was appropriate because Kerzer failed to demonstrate that the legitimate nondiscriminatory reason proffered by Kingly for discharging her was a pretext for discrimination. This too was error.

As discussed above, once a plaintiff establishes a *prima facie* case of pregnancy discrimination, the burden is on the defendant to produce evidence "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Hicks*, 509 U.S. at 509, 113 S.Ct. at 2748.

Here, Kingly presented various affidavits to show that it discharged Kerzer because her services were no longer required, a decision Kingly claims it reached during Kerzer's maternity leave but informed Kerzer of only on the eve of her return. The district court properly concluded that this evidence was sufficient to rebut the presumption of pregnancy discrimination raised by Kerzer's *prima facie* case. Accordingly, the burden returned to Kerzer to show by a preponderance of the evidence that Kingly's stated reason was pretextual.

### C. Pretext for Pregnancy Discrimination

To establish that Kingly's proffered reason for discharging Kerzer was pretextual, Kerzer must demonstrate through direct, circumstantial, or statistical evidence that Kingly's reason for discharging her was false and that it was more likely that Kingly discharged her because she became pregnant and took maternity leave. *See Gallo*, 22 F.3d at 1225.

To demonstrate pretext, Kerzer relied, as she was entitled to do, on the same evidence she used to support her *prima facie* case. *See id.* Specifically, Kerzer relied on (1) Mintz's alleged comments that (a) an employer could get away with discharging a

focused only on whether Kerzer had presented facts from which a jury could find that she had been replaced.

pregnant employee by contending that the position was eliminated and (b) Kerzer's pregnancy was a sign that she was lazy; (2) Kerzer's statement that Mintz became unfriendly toward her following her announcement that she was pregnant; (3) Folkoff's call to her in early February 1993 asking her to return to work earlier than expected; (4) her dismissal over the telephone shortly before her scheduled return date; and (5) the hiring of, and duties performed by, Bahorsky. In concluding that Kerzer had failed to raise a triable issue as to pretext, the district court considered only the alleged statements by Mintz and Kerzer's statement that Mintz had become unfriendly towards her.

We conclude, viewing all the evidence submitted by Kerzer, that Kerzer has raised a genuine issue of material fact as to whether Kingly's reason for terminating Kerzer's employment is false and as to whether it is more likely that Kingly discharged Kerzer because she became pregnant and took maternity leave. Accordingly, the district court erred in finding, as a matter of law, that Kerzer failed to demonstrate pretext.

CONCLUSION

The judgment appealed from is reversed and the case is remanded for further proceedings consistent with this opinion.