Arlene McCARTHY

v.

**STATE OF CONNECTICUT, DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES.**

No. 3:97CV2556(AHN).

United States District Court,
D. Connecticut.

June 23, 1999.

---

Richard W. Gifford, Wethersfield, CT, for Plaintiff.

Richard J. Lynch, Attorney General's Office Health & Human Services, Hartford, CT, for Defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

The plaintiff, Arlene McCarthy ("McCarthy"), bring this action against the defendant, State of Connecticut, Department of Mental Health and Addiction Services ("DMHAS"), alleging violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"), termination in violation of public policy as stated in the ADEA and Conn.Gen.Stat. § 46a–60(a), and violation of the due process clause.[1]

Now pending before the Court are DMHAS's Motion for Summary Judgment and McCarthy's Cross–Motion for Summary Judgment. For the reasons that follow, DMHAS's motion [doc. # 13] is GRANTED IN PART and DENIED IN PART and McCarthy's motion [doc. # 17] is DENIED.

### STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Rule 56(c); *see Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (citation and internal quotation marks omitted). The party seeking summary judgment bears the burden of showing that no genuine dispute about an issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

After discovery, if the party against whom summary judgment is sought "has

---

1. While unartfully pled, the parties do not appear to dispute that McCarthy's third count actually alleges a due process violation. Therefore, the Court shall treat her third count as such.

failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing the record to determine whether a genuine dispute as to a material fact exists, a court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) (citation omitted). A district court must be especially cautious about granting summary judgment in an employment discrimination case when the employer's intent is at issue. *See Kerzer,* 156 F.3d at 400.

The movant's burden does not shift when cross-motions for summary judgment are before the court; rather, each motion must be judged on its own merits. *See Association of Int'l Auto. Mfrs., Inc. v. Abrams,* 84 F.3d 602, 611 (2d Cir.1996) (citation omitted). Thus, neither party may be entitled to judgment as a matter of law despite the fact that cross-motions for summary judgment have been filed. *See Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993) (citation omitted).

### FACTS

On July 20, 1984, McCarthy started working as an Executive Secretary for the Deputy Commissioner of DMHAS. (*See* Pl.'s 9(c) Statement ¶ A1 [hereinafter "Pl.'s Stat."].) After the Deputy Commissioner was promoted to Commissioner in 1987, McCarthy was assigned to work for the replacement Deputy Commissioner. (*See id.* ¶¶ A8, A11.) On February 14, 1991, the replacement Deputy Commissioner was transferred to another facility. (*See id.* ¶ A12.) Subsequently, on April 3, 1991,

McCarthy was notified that her position had been eliminated. (*See id.* ¶ A13.)

After elimination of her position as Executive Secretary for the Deputy Commissioner, McCarthy sought to become qualified for a Secretary 2 position. (*See id.* ¶ A14.) McCarthy's previous position had been considered "unclassified" under Connecticut state service law. (*See id.* ¶¶ A3–A5.) A Secretary 2 position, however, is "classified." (*See id.* ¶ A14.) As such, McCarthy had to pass an exam and work in a Secretary 1 position for six months before she could work in a Secretary 2 position. (*See id.* ¶ A15.) She fulfilled both of these requirements and became eligible to work as a Secretary 2. (*See id.* ¶ A16.)

During the time McCarthy was employed as a Secretary 1, she was offered an Executive Secretary position by the newly appointed Superintendent for Cedarcrest Hospital, Dr. David Hunter ("Hunter"). (*See id.* ¶ A17.) She accepted this offer, rather than taking a Secretary 2 position, because it provided greater pay. (*See id.* ¶ A18.) On November 25, 1991, DMHAS sent written notification to McCarthy of her job change which indicated that her new position was unclassified. (*See id.* ¶ A19.)

In August 1996, Hunter was reassigned to a facility in Bridgeport, Connecticut. (*See id.* ¶ A20.) He offered to take McCarthy with him but she declined to move. (*See id.* ¶ A20.) On November 23, 1996, the new Superintendent of Cedarcrest Hospital, Dr. Andrew Phillips ("Phillips"), started. (*See id.* ¶ A23.) After Phillips began as the new Superintendent, McCarthy worked as the Executive Secretary for him. (*See id.* ¶¶ A23–A24.) McCarthy characterized Phillips as being, during the time she worked for him, uncommunicative and unfriendly towards herself and others. (*See id.* ¶ A24.)

On January 21, 1997, McCarthy was notified by Phillips that she was being terminated on the 30th of that month. (*See id.* ¶ A25.) Phillips apparently wanted to

choose his own Executive Secretary. (*See id.* ¶ A25.) At the time of her termination, McCarthy was notified of several Secretary 1 positions that were available. (*See id.* ¶ A29.) She did not apply for any of these positions, but instead, decided to retire. (*See id.* ¶ A30.)

McCarthy was sixty-one when she received the notice of termination. (*See* Compl. ¶ 7.) She was replaced by a substantially younger person. (*See id.* ¶ 8.)

McCarthy alleges that DMHAS's termination of her violates the ADEA ("Count One"), violates public policy as stated in the ADEA and Conn.Gen.Stat. § 46a–60(a) ("Count Two"), and violates her due process rights ("Count Three").

## DISCUSSION

DMHAS moves for summary judgment on all three counts of the complaint. First, DMHAS argues that no ADEA violation occurred because McCarthy's termination by Phillips was a legitimate exercise of managerial discretion. Second, they assert that her claim based on a public policy violation is not actionable because there exists an adequate statutory remedy for the alleged unlawful actions. Third, they argue that McCarthy did not have a property interest in continued employment as she was an unclassified employee and, therefore, she cannot maintain a claim for violation of the Fourteenth Amendment's due process clause.

McCarthy moves for summary judgment on her ADEA claim on the ground that DMHAS has failed to offer a legitimate, nondiscriminatory reason for her termination.

### I. *ADEA Claim*

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1) (West 1999). The ADEA covers the class of individuals who are over the age of forty. *See id.* § 631(a).

The "evidentiary framework for proving age discrimination under the [ADEA] is the same as that for proving discrimination under Title VII." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999) (citation omitted). Where, as here, a plaintiff alleges disparate treatment, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as interpreted by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), applies. *See Hollander*, 172 F.3d at 198–99. The Supreme Court has described the basic allocation of burdens and order of presentation applicable to a *McDonnell Douglas* disparate treatment analysis as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine*, 450 U.S. at 252–53, 101 S.Ct. 1089 (citations and internal quotation marks omitted); *see also Hollander*, 172 F.3d at 199 (applying analysis to ADEA claim). "The question that must be asked is whether the plaintiff has shown, by a preponderance of the evidence, that he has been the victim of age discrimination." *Hollander*, 172 F.3d at 199. Although the burdens of production shift during this analysis, the "plaintiff at all times bears

the ultimate burden of persuasion." *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742 (citations and internal quotation marks omitted).

■ To establish a *prima facie* case of age discrimination, a plaintiff must prove that (1) she was a member of the protected age group, (2) she was qualified for the job, (3) she was discharged, and (4) the discharge occurred under circumstances that give rise to an inference of age discrimination. *See Hollander*, 172 F.3d at 199. An inference of age discrimination may be shown by proof that the plaintiff was replaced by a younger individual or in other ways depending upon the particulars of the case. *See McDonnell Douglas*, 411 U.S. at 802 & n. 13, 93 S.Ct. 1817. "The burden of establishing a *prima facie* case of disparate treatment is not onerous[,]" however, these elements "must [be] prove[n] by a preponderance of the evidence." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *see also Hollander*, 172 F.3d at 199 (stating that burden of establishing *prima facie* case is minimal).

■ "If the plaintiff demonstrates a *prima facie* case, a presumption that the employer unlawfully discriminated against the employee is raised, and the burden of production then shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason for discharging the employee." *Kerzer*, 156 F.3d at 401 (citations and internal quotation marks omitted). If the employer satisfies this burden, the presumption raised by the establishment of the *prima facie* case is rebutted and the plaintiff then has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *See id.*

■ In order to establish that the employer's reason for termination was pretextual, a plaintiff must show both "that the reason was false, and that discrimination was the real reason." *Hicks*, 509 U.S. at 515, 113 S.Ct. 2742. At the summary judgment stage, this means that the "plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Kerzer*, 156 F.3d at 401 (citation and internal quotation marks omitted). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742.

■ Here, DMHAS concedes for the purposes of its motion that McCarthy can establish a *prima facie* case of discrimination. They assert that the non-discriminatory reason for McCarthy's termination was that Phillips, the newly-appointed Superintendent, properly exercised his managerial discretion to select an Executive Secretary of his own choosing.[2] In response, McCarthy cross-moves for summary judgment on the ground that DMHAS's assertion fails to satisfy their burden of producing a legitimate, non-discriminatory reason for her termination.

The purpose of the employer's "burden of production [is to] frame[ ] the factual issue with sufficient clarity to afford the employee a full and fair opportunity to

---

**2.** In addition, DMHAS claims that because McCarthy was an unclassified employee that she did not have the pre-termination rights that classified employees possess and could be terminated without cause. In response, McCarthy argues that whether she had any pre-termination rights is irrelevant to her claim of age discrimination because the ADEA does not exempt at-will employees. The Court agrees and, therefore, concludes that regardless of whether McCarthy was a classified or an unclassified employee DMHAS must still produce a legitimate, non-discriminatory reason for her termination based on "reasonable factors other than age." 29 U.S.C. § 623(f)(1).

demonstrate pretext." *Meiri v. Dacon,* 759 F.2d 989, 996–97 (1985). Indeed, other courts have found vague or conclusory reasons for adverse employment actions to be insufficient to sustain the employer's burden. *See, e.g., Rowe v. Cleveland Pneumatic Co.,* 690 F.2d 88, 96 (6th Cir. 1982) (finding insufficient employer's reason that "explains only that persons to whom the employment decision was delegated did not want [plaintiff]").

■ In opposition to McCarthy's cross-motion, DMHAS produced an affidavit by Phillips that states that McCarthy was terminated because "she repeatedly ignored [Phillips's] requests, and engaged in behavior that [he] felt was not acceptable." (*See* 4/9/99 Aff. Andrew Phillips ¶ 6.) At oral argument on May 5, 1999, McCarthy conceded that Phillips's affidavit minimally satisfies DMHAS's burden of production. On that basis, the Court holds that McCarthy's cross-motion for summary judgment must be denied.

DMHAS argues in support of their motion for summary judgment that McCarthy cannot demonstrate pretext because she has stated that Phillips was unfriendly and non-communicative towards all staff members. In response, McCarthy contends that the elements of her *prima facie* case along with the following allegations create a genuine issue of fact in regard to her claim of pretext:

(1) She had received excellent performance evaluations.

(2) In the past, other DMHAS executives had not replaced their secretaries.

(3) Phillips told Hunter that he wanted to retain McCarthy as his executive secretary and, in fact, kept her in that position for two months.

(4) Phillips violated DMHAS policies and procedures, and state statutes that define her as a classified employee by terminating her without notice and a hearing.

(*See* Pl.'s Mem.Law Opp'n Def.'s Mot. Summ.J. and In Supp. Pl.'s Cross–Mot. Summ.J. at 10.)

■ The pretext inquiry takes into consideration whether, as here, "the putative non-discriminatory purpose was stated only after the allegation of discrimination." *DeMarco v. Holy Cross High Sch.,* 4 F.3d 166, 171 (2d Cir.1993). However, a "plaintiff may prevail only if an employer's proffered reasons are shown to be a pretext for discrimination, either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction—or both." *Fisher v. Vassar College,* 114 F.3d 1332, 1339 (2d Cir.1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). Thus, a plaintiff must show not only that the proffered reason was false, but also, either that the proffered reason reflects stereotypical, discriminatory thinking or that other evidence in the record supports the claim of discrimination, such as age-related remarks or actions. *See Hollander,* 172 F.3d at 201. However, where (1) the difference in age between the plaintiff and the selected individual is substantial, (2) the plaintiff may be better qualified than the selected individual, (3) the record does not "contain a variety of plausible, non-discriminatory reasons for the plaintiff's discharge[,]" and (4) the record "appears to be devoid of any consideration other than the wide age discrepancy between the two candidates that could explain [the] preferential treatment accorded" the selected individual, a factfinder may be "entitled to infer that age was the decisive factor" in the employment decision. *Banks v. Travelers Companies,* 180 F.3d 358, 367 (2d Cir.1999).

Here, genuine issues of material fact exist in regard to the circumstances surrounding the decision to terminate McCarthy. DMHAS has proffered different explanations for the decision at different times and no contemporaneous record of the reason for the termination exists; McCarthy alleges that she was replaced by

a substantially younger individual;[3] Phillips's affidavit was generated only after McCarthy cross-moved for summary judgment; McCarthy claims that she received positive evaluations; and she alleges that she had reason to believe that Phillips initially intended to keep her and, in fact, she did work for him for two months before being terminated. While the record does not contain clear evidence of age-based animus, it also does not contain unambiguous evidence of a legitimate, non-pretextual reason for McCarthy's termination. Given the present state of the record, the Court cannot hold as a matter of law that a reasonable factfinder could not find age discrimination based on McCarthy's *prima facie* case coupled with a disbelief of DMHAS's asserted reasons for her termination. *See Hicks,* 509 U.S. at 511, 113 S.Ct. 2742. Therefore, DMHAS's motion for summary judgment as to Count One must be denied.

## II. *Public Policy Violation*

DMHAS argues that Count Two of McCarthy's complaint, which states a cause of action based on wrongful termination in violation of an important public policy, *see Sheets v. Teddy's Frosted Foods,* 179 Conn. 471, 427 A.2d 385 (1980), cannot survive where there is an adequate statutory remedy available, *see Atkins v. Bridgeport Hydraulic Co.,* 5 Conn.App. 643, 648, 501 A.2d 1223 (1985).

McCarthy responds briefly to this argument by pointing out that the language in *Atkins* was dicta that has never been adopted by the Connecticut Supreme Court. However, she recognizes that this Court has followed *Atkins. See Bennett v. Beiersdorf,* 889 F.Supp. 46 (D.Conn.1995). In *Bennett,* this Court noted that "the public policy against age discrimination in employment cannot justify a claim based on the covenant of good faith and fair dealing, because there are already suffi-

cient statutory remedies." *Id.* at 49 (citing *Atkins,* 5 Conn.App. at 648, 501 A.2d 1223).

In the absence of persuasive argument to the contrary, the Court declines to revisit its previous opinion and holds that McCarthy cannot maintain a *Sheets* claim given the statutory remedies available to her. Thus, summary judgment is granted in favor of DMHAS on Count Two.

## III. *Due Process Claim*

DMHAS argues that McCarthy cannot sustain her violation of due process claim because she was an unclassified employee who did not possess a property right to continued employment. In response, McCarthy argues that she was a classified employee and, in the alternative, that the real question for determining whether she had a property right to continued employment under Connecticut state law is whether she was a permanent employee.

In general, a public employee who has a property right in continued employment cannot be deprived of that right without due process. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The Supreme Court has stated that:

[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

---

**3.** The present record does not provide the age of the person who replaced McCarthy as Phil-

lips's Executive Secretary.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). When state law "makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection." *RR Village Ass'n v. Denver Sewer Corp.,* 826 F.2d 1197, 1201–02 (2d Cir.1987). Moreover, "mutually explicit understandings ... do not 'create a property interest for the purposes of due process when they are contrary to the express provisions of regulations and statutes.'" *Chu v. Schweiker,* 690 F.2d 330, 334 (2d Cir.1982) (quoting *Baden v. Koch,* 638 F.2d 486, 492 (2d Cir.1980)).

Here, DMHAS claims that because McCarthy was an unclassified employee that the due process protections afforded classified employees do not apply to her. They assert that as an Executive Secretary she was exempt from classified service even though she had obtained classified status as a Secretary 1. Connecticut state law *exempts* from classified service:

> One personal secretary to the administrative head and to each subsecretary or deputy to such head of each department or institution provided any classified employee whose position is affected by this subsection shall retain classified status in such position.

Conn.Gen.Stat. § 5–198(k). DMHAS maintains that this language indicates that McCarthy did not retain her classified status when she became an Executive Secretary at Cedarcrest. In response, McCarthy argues that section 5–198(k) means that she retained her classified status when she accepted the "nominally" unclassified position of Executive Secretary.

 In regard to this claim, DMHAS has not satisfied its burden to show that no genuine dispute about an issue of material fact exists. *See Adickes,* 398 U.S. at 157, 90 S.Ct. 1598. Whether McCarthy held a "position," *i.e.,* "a group of duties and responsibilities currently assigned or designated by competent authority to require

the services of one employee," Conn.Gen. Stat. § 5–196(22), that subsection 5–198(k) affected is unclear given the current state of the record. Undisputed evidence about what positions this subsection affects and about how McCarthy's position and situation compares to affected positions is lacking. *Cf. Brady v. Gebbie,* 859 F.2d 1543, 1548–49 (9th Cir.1988) (discussing distinction between classified and unclassified positions under Oregon law where entire position plaintiff held was clearly changed from classified to unclassified service). Moreover, whether McCarthy's "position" changed is unclear. The Court notes that if McCarthy was a classified employee, she would have possessed a sufficient property right in her continued employment to support her due process claim. *See King v. Lensink,* 720 F.Supp. 236, 239 n. 1 (D.Conn.1989) (recognizing "that classified civil service employees in Connecticut have a property right in continued employment which is protected by the due process clause of the fourteenth amendment" (citation omitted)). Thus, DMHAS's motion for summary judgment as to Count Three is denied.

## CONCLUSION

For the reasons stated above, DMHAS's Motion for Summary Judgment [doc. # 13] is GRANTED as to Count Two and DENIED as to Counts One and Three. McCarthy's Cross–Motion for Summary Judgment [doc. # 17] is DENIED.