15-3910-cv
*Baldwin v. New York State, State University of New York, College at Buffalo*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of May, two thousand seventeen.

Present:
> JOHN M. WALKER, JR.,
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> > *Circuit Judges.*

---

SUSAN BALDWIN,

> *Plaintiff-Appellant*,

> v.                                                                            15-3910

NEW YORK STATE, STATE UNIVERSITY OF NEW YORK, COLLEGE AT BUFFALO,

> *Defendant-Appellee*.

---

| | |
|---|---|
| For Plaintiff-Appellant: | LINDY S. KORN, Candace R. Alnaji (on the brief), Law Office of Lindy Korn PLLC, Buffalo, New York |
| For Defendant-Appellee: | BRIAN D. GINSBERG, Victor Paladino (on the brief), Assistant Solicitors General, Barbara D. Underwood, Solicitor General, *for* Eric T. Schneiderman, Attorney General of the State of New York, Albany, New York |

**UPON DUE CONSIDERATION WHEREOF** it is hereby **ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Dr. Susan Baldwin appeals from a judgment of the United States District Court for the Western District of New York (Scott, *M.J.*), entered on August 31, 2015, granting summary judgment to the Defendant-Appellee on *inter alia* Baldwin's claim of retaliation under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681 *et seq.* She also appeals from the order denying her motion for reconsideration under Federal Rule of Civil Procedure 59(e). We assume the parties' familiarity with the facts, procedural history, and specification of the issues on appeal, some of which we discuss briefly below.

## I.    Background[1]

Baldwin began her employment at the State University of New York, College at Buffalo ("SUNY-Buffalo"), in 2002 as a lecturer in its health and wellness department. She became an assistant professor after she obtained her Ph.D. in 2006. Baldwin received generally positive performance reviews from the head of her department, Dr. Scott Roberts, though Roberts repeatedly emphasized in his written appraisals the importance of scholarly publication for Baldwin to obtain tenure. In October 2010, he expressed concern that as of that time, "no substantial publications [we]re in print or in press." J.A. 258. He suggested that Baldwin's lack of peer-reviewed publications might jeopardize her tenure application.

Baldwin applied for tenure in September 2011. Her retaliation claim centers on events that transpired the previous spring. At that time, Baldwin spoke with Roberts about complaints she had received from students concerning classroom remarks by him that these students deemed

---

[1]  The following facts are drawn from the summary judgment record and, unless otherwise noted, are undisputed.

2

inappropriate. Roberts responded that he was unaware that students felt this way and would make a general apology to the class. Baldwin also mentioned the student complaints to Mark Severson, Dean of the School of Natural and Social Sciences, which included the health and wellness department.

Roberts conducted the first review of Baldwin's tenure application that fall. He recommended that the college deny her tenure because of her inadequate publication record. At the time Roberts reviewed her application, Baldwin was the third author on an article—"Perceptions of International Faculty in U.S. Colleges"—published in the *International Journal of Science in Society*. Roberts observed that this journal was not a health education or health science journal. Baldwin had another article, "Professional Development through Planning for and/or Participating in Accreditation," accepted for publication in *Health Promotion Practices*. Roberts noted that *Health Promotion Practices* was a "solid health journal" but that Baldwin's self-stated contribution to the article was only 25%. J.A. 261. Roberts concluded that Baldwin "ha[d] not met the minimum requirements [for tenure] in the area of scholarship." *Id.* at 262.

Next, a committee of faculty from the School of Natural and Social Sciences reviewed Baldwin's portfolio for promotion to associate professor. By that time, Baldwin had another article—her first as lead author—accepted for publication in the *American Journal of Health Studies*, "The Contributions of Credentialing and the Code of Ethics to Quality Assurance in the Health Education/Promotion Profession." The committee stated that Baldwin had a relative "lack of publications in refereed journals," but noted other activities classified as scholarship, including a physical education grant proposal that Baldwin claimed to have co-authored.

3

J.A. 794. The committee recommended that Baldwin be promoted, but was not charged with assessing whether she should also be granted tenure.

During the committee's review, Roberts, who as department head was responsible for reference-checking Baldwin's application, noted that Baldwin's name did not appear on the physical education grant proposal that her materials stated she had co-authored. Roberts contacted the listed author, Carol Propis, who stated that Baldwin's contribution to the proposal was minimal and did not rise to the level of co-authorship. Roberts passed this information along to Dean Mark Severson, who was to conduct the next review of Baldwin's materials. Severson contacted Propis, met with Baldwin, reviewed materials regarding the grant proposal that Baldwin provided, and spoke with individuals suggested by her in connection with the proposal. He thereafter recommended against tenure, citing Baldwin's "modest" publication record and the apparent "exaggerat[ion] [of] her contribution to" the grant proposal. J.A. 881. Next, Provost Dennis Ponton reviewed Baldwin's materials in late November 2011 and recommended that tenure be denied. In late December, President Aaron Podolefsky performed the final review and denied Baldwin's application. Her employment terminated in January 2013.

Baldwin filed suit in district court. She claimed that SUNY-Buffalo had violated Title IX by denying her tenure in retaliation for reporting the student complaints about inappropriate remarks allegedly made by Roberts during class.[2] The Defendant-Appellee moved for summary judgment, and the district court granted the motion. The court, assuming *arguendo* that Baldwin had established a *prima facie* case of retaliation, concluded, in essence, that

_____

[2] Baldwin had earlier filed a claim with the New York State Division of Human Rights, but the Division found no probable cause to conclude that her tenure denial was the product of unlawful retaliation. Baldwin also brought claims in district court under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.*, but the district court dismissed them, and she limits this Court's review to her Title IX claim.

SUNY-Buffalo had articulated legitimate, non-retaliatory reasons for denying her tenure and that Baldwin failed to raise a genuine issue of material fact as to its justification. Baldwin filed a motion for reconsideration. The court denied the motion.

## II.    Discussion

Title IX prohibits retaliation against a person because that person has complained of sex discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). "A plaintiff claiming retaliation under Title IX must first establish a *prima facie* case by showing: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 91-92 (2d Cir. 2011). "Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 92 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "After the defendant has done so, the burden shifts back to the plaintiff to demonstrate that the articulated reasons are pretextual." *Id.* The desire to retaliate must be a "but-for cause of the challenged employment action." *Burrage v. United States*, 134 S. Ct. 881, 890 (2014). We review a district court's grant of summary judgment in a Title IX case de novo, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005).

On appeal, Baldwin argues that she adduced sufficient evidence such that a reasonable jury could conclude that Roberts recommended against tenure because Baldwin reported his students' complaints. First, Baldwin argues that there is temporal proximity between when she reported the complaints in March, April, and June 2011 and Roberts's negative review in

5

September 2011. Even close temporal proximity, however, while sometimes sufficient to show a causal connection for the purposes of making out a *prima facie* case, is insufficient, standing alone, "'to satisfy [plaintiff's] burden to bring forward some evidence of pretext.'" *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 72 (2d Cir. 2015) (quoting *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (per curiam)). Baldwin urges that Roberts's view of her scholarship record changed from favorable to unfavorable after she raised his students' concerns, pointing to the October 2010 letter from Roberts in which he supported a one-year renewal of Baldwin's appointment in the health department. In that letter, however, Roberts also expressed concern that "to date no substantial publications are in print or in press," and explicitly warned that "[t]his could jeopardize a favorable review for continuing appointment next year." J.A. 257-58. Contrary to Baldwin's claim, Roberts's "consistent perspective" on Baldwin's publication record undermines the reasonableness of any inference that her complaints caused his negative recommendation. *Ya-Chen Chen*, 805 F.3d at 72.

Baldwin also fails to raise a genuine issue of material fact whether she would have been given tenure but for Roberts's negative recommendation. Severson independently reviewed Baldwin's materials and provided an additional reason why he recommended against tenure: the "discrepancy" about Baldwin's role in the grant proposal. J.A. 881. Baldwin speculates that Roberts's recommendation "tainted" Severson's, but speculation is insufficient to raise a genuine issue of material fact. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). The record is undisputed that Severson conducted his own independent investigation: he spoke with Propis, reviewed material submitted by Baldwin, and conducted interviews of individuals Baldwin promised would corroborate her account of her role in the grant application process

6

before concluding that Baldwin "appear[ed] to have exaggerated her contribution." J.A. 880-81.

Baldwin also argues that her record of published scholarship was adequate. She claims that the college never provided her with a clear requirement for published scholarship, and if it did, she met that requirement. This Court has repeatedly stated that colleges retain the right to set and apply the criteria for promotion to tenured professor. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999); *accord Weinstock v. Columbia Univ.*, 224 F.3d 33, 47 (2d Cir. 2000). Here, "numerous promotional review materials in the record support [SUNY-Buffalo's] position" that published scholarship in peer-reviewed national journals was an important criterion for tenure. *Vassar Coll.*, 196 F.3d at 455. Baldwin's disagreement with how SUNY-Buffalo applied its tenure criteria is insufficient evidence of pretext.

Finally, Baldwin relies on an e-mail from a SUNY-Buffalo Human Resources representative, Susan Earshen, that Baldwin received after Ponton notified Human Resources about Baldwin's retaliation complaint. The e-mail states: "The College must continue your ongoing review process for continuing appointment and promotion in order to meet contractual notification deadlines. However, if you file a discrimination complaint through our internal complaint process in the Office of Equity and Diversity, the outcome of the investigation into your complaint may impact on the ultimate decision regarding your appointment." J.A. 869. Baldwin argues that this language is an explicit threat that if she filed an internal complaint, she would be denied tenure. We disagree. The e-mail links the *outcome*—not the filing—of Baldwin's complaint to the tenure decision. And, as the district court stated, the "full context makes plain" that this sentence was merely an explanation of how the timelines for a complaint and Baldwin's

7

tenure application would interact. *Baldwin v. New York*, 13-CV-485-HBS, 2015 WL 6696505, at *2 (W.D.N.Y. Nov. 2, 2015). Specifically, SUNY-Buffalo could not halt Baldwin's tenure review because of contractual deadlines, but a finding of retaliation might affect SUNY-Buffalo's ultimate decision on Baldwin's application for tenure. Accordingly, the Earshen e-mail does not evidence retaliation and does not alter the conclusion, here, that the district court properly granted summary judgment to the Defendant-Appellee.

\*     \*     \*

We have considered Baldwin's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8