**Zyroon KHAN, Plaintiff,**

v.

**ABERCROMBIE & FITCH, INC., Defendant.**

No. 97–CV–2461 (ILG).

United States District Court, E.D. New York.

Feb. 26, 1999.

Melinda R. McAfee, Vorys, Sater, Seymour and Pease LLP, Columbus, OH, for Defendant.

Charmaine M. Stewart, Charmaine M. Stewart & Associates, Elmont, NY, for Plaintiff.

### MEMORANDUM & ORDER

GLASSER, District Judge.

### BACKGROUND

Zyroon Khan ("Khan" or "Plaintiff"), a black woman, filed this complaint against her employer, Abercrombie & Fitch ("A & F"), alleging that it discriminated against her on the basis of her race and color in violation of

Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981; and N.Y.Exec Law § 296 *et seq.*[1] A & F now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### FACTS

A & F is a national clothing retailer operating approximately 170 stores nationwide. The plaintiff works as a Security Supervisor in the Security Department of A & F, which consists of a Director of Security, Investigators, Security Supervisors and Security Guards.

A & F hired Khan as a Shipping and Receiving Manager on December, 1987. On March 12, 1995, she was promoted to Security Supervisor and she is currently employed in this position. As Security Supervisor, Khan's duties include observing and correcting problems within a store that may lead to greater theft, managing security guards and performing "bag checks" (when A & F employees leave an A & F store, they have their bags checked for any stolen Abercrombie merchandise). Def. Rule 56.1 Statement ¶ 3. Khan is the Security Supervisor for two A & F stores; one in Staten Island and the other located at the South Street Seaport in Manhattan.

In May of 1996, Powell Williams ("Williams"), a white male, became the District Manager of the New York District. *Id.* ¶ 7. On June 12, 1996, he visited the Staten Island store where Khan was working that day. *Id.* ¶ 13. Williams refused to allow Khan to perform a "bag check" on him when he was leaving the store. *Id.* The following day, Khan sent a memorandum to her supervisor, Dean Brocious ("Brocious"), regarding the incident. *Id.* After Khan sent the memorandum to Brocious, she learned from Greg Holtz, the A & F Staten Island Store Manager, that Williams referred to her as a "black bitch" because of the "bag check incident." *Id.* ¶ 14. On hearing this, plaintiff faxed another memorandum to Brocious informing him that Holtz told her that Williams called her a "black bitch." *Id.* ¶ 15.

On August 5, 1996, Tim Moore ("Moore"), a white male, replaced Brocious as the Director of Security for A & F and became Khan's direct supervisor. *Id.* ¶ 25. Moore was informed by at least three A & F employees that Khan had a "credibility problem." Moore. Dep. at 39. Specifically, John Carriero ("Carriero"), an A & F Security Investigator, informed Moore that Khan had followed a suspected shoplifter out of an A & F store with a "sensormatic" (a device attached to merchandise that sets off an alarm if it is not moved before exiting the store) in her pocket in order to set off the alarm system. He alleged that Khan then searched the suspected shoplifter under the pretext that the putative shoplifter had set off the alarm. Def. Rule 56.1 Statement ¶ 26.

Despite the fact that Moore thought the sensormatic incident was a terminable offense, he decided to place Khan on probation. Moore Dep. at 72. On August 13, 1996, A & F's Vice President of Human Resources, Jane Ramsey, and Moore prepared a "probation memorandum" for Khan. It read as follows:

The following are issues of concern that must be addressed immediately.

***Credibility:*** You have not yet earned the trust and credibility of many important people in your district. You are perceived to exaggerate and be manipulative. You are seen by some as having an intimidating style.

***Goal:*** Establish credibility with your peers and the management in your district. Work to be seen as a direct, truthful individual who can present the unvarnished truth in an appropriate and helpful way. Don't gossip; don't misrepresent situations. Work to be more approachable.

***Judgment:*** Your judgment in handling situations has been questionable, and needs improvement; e.g. you did not inform Human Resources about a sexual harassment concern that was raised, and you exited the building with sensormatics in your pocket as discussed.

1. Plaintiff's complaint originally alleged additional causes of action for Defamation and

Breach of Implied Contract. She has withdrawn those claims. Pl.Rule 56.1 Statement ¶ 32.

*Goal:* Operate within the role and scope of your position. Do not, for instance, assume the role of Investigator. Make good decisions about whom to inform about situations and how to follow up on issues and concerns. Ensure that your methods are ethical and that you protect the company by operating within our standards and guidelines.

I understand that over the next 90 days, I am expected to meet the above goals or I will be terminated from employment with the company. I further understand that, if at any time during this period, it is determined that I am making insufficient progress towards achieving these goals, further disciplinary action up to and including immediate termination will result.

Pl. Mem. Ex. C. Khan refused to sign the memorandum because she believed it contained untrue allegations about her. Khan Aff. ¶ 23.

On August 22, 1996, Moore met with Khan to give her a performance review. Pl. Rule 56.1 Statement ¶ 10. During the review, Moore told her that she was being placed on probation and gave her the probation memorandum. Khan was also told that her investigative duties would be reduced. Moore Dep. at 63.

On August 28, 1996, Khan filed a charge of discrimination with the New York Human Rights Commission on the grounds that she was put on probation and retaliated against by A & F for her complaints about Williams' comment.

On October 2, 1996, Williams received a written "Final Warning" for calling Khan a "black bitch." *Id.* ¶ 21. This "Final Warning" was placed in Williams' permanent personnel file. *Id.*

Since Williams' reprimand, he and the plaintiff have not had any reported incidents or difficulties. *Id.* ¶ 24. Williams is still the District Manager for New York. *Id.*

Moore removed Khan from probation on November 18, 1996. Def. Rule 56.1 Statement ¶ 31. During the time that Khan was on probation, her job title, salary and benefits remained the same. *Id.* Khan has not been put on probation nor disciplined since she was removed from probation. *Id.* Khan has received two salary raises since her probation. *Id.*

On January 31, 1997, Khan received a Right–to–Sue Letter from the Equal Employment Opportunity Commission ("EEOC"). Pl. Rule 56.1 Statement ¶ 31. On May 2, 1997, she filed this action against A & F on the grounds that it discriminated and retaliated against her and subjected her to a hostile work environment. *Id.* ¶ 31.

On October 12, 1997, after discovery was taken, A & F moved for summary judgment. For the reasons that follow, its motion is granted.

## DISCUSSION

### I. *Summary Judgment Standard of Review*

Summary judgment under Rule 56 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proof on such motion. *See United States v. All Funds,* 832 F.Supp. 542, 550–51 (E.D.N.Y.1993).

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the nonmovant who must demonstrate that a genuine issue of fact exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Id.* The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106

S.Ct. 2548. Once the nonmovant has adduced evidence of a genuine issue of material fact, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Samuels v. J. Mockry*, 77 F.3d 34, 36 (2d Cir.1996).

In employment discrimination cases, courts are particularly cautious about granting summary judgment where intent is at issue. *See Schwapp v. Town of Avon*, 118 F.3d 106, 109 (2d Cir.1997). However, even in these cases a "plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id.*

## II. *Race Discrimination*

### A. *Legal Standard*[2]

The relevant section of Title VII, declares it to

> be an unlawful employment practice for an employer—
>
> > (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

In a series of decisions, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court set forth the allocation of burdens and orders of presentation in a Title VII case. First, "the plaintiff has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination." *Burdine*, 450 U.S. at 252–53, 101 S.Ct.

1089. Second, "if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse employment decision]." *Id.* at 253, 101 S.Ct. 1089. Third, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

In this case, to establish a prima facie case of discrimination, plaintiff is required to establish (1) that she is black, (2) that she performed her job at A & F in a satisfactory manner, (3) that she was subject to an adverse employment action, and (4) that the decision occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995).

A & F concedes that Khan can satisfy the first two prongs of her prima facie case—that she is a member of a protected class and that her job performance is satisfactory. Def. Mem. at 8. It argues, however, that Khan is unable to show that she was subjected to any adverse employment action nor can she demonstrate that any such action occurred under circumstances giving rise to an inference of unlawful discrimination. *Id.*

### B. *The Discriminatory Conduct*

Khan alleges that she suffered an adverse employment action when Williams called her a "black bitch."[3] Williams' comment is condemnable, but is not, without more, actionable. *See, e.g., Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2nd Cir.1997) ("utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of em-

---

**2.** Plaintiff has brought race discrimination claims under Title VII and § 1981—this Court uses the same legal standard to evaluate both. *See Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 44 (2d Cir.1984) (holding that the "same elements constitute a claim for employment discrimination under § 1981 as under Title VII").

**3.** Plaintiff has also stated that her receipt of the probation memorandum was an adverse employment action. However, that memorandum was given to her only after she complained of Williams' racist behavior and is accordingly analyzed as part of plaintiff's retaliation claim discussed, *infra*.

ployment to implicate Title VII") (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295) (1993) (other internal quotations omitted); *see also Snell v. Suffolk County,* 782 F.2d 1094, 1102 (2d Cir.1986) (stating that a few isolated incidents of racial enmity do not give rise to a Title VII violation); *Abidekun v. New York City Transit Authority,* 1998 WL 296372 (E.D.N.Y. June 4, 1998) (same). Khan does not allege any other incidents of discriminatory conduct. As such, this Court finds that she did not suffer an adverse employment action.

Because Khan fails to show that she suffered an adverse employment action, she cannot establish a prima facie case of employment discrimination under Title VII or § 1981 and A & F is entitled to summary judgment on her claim of race discrimination.

### III. *Hostile Work Environment*

▆▆▆ A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe to alter the conditions of the victim's employment." *Torres v. Pisano,* 116 F.3d 625, 630–31 (2d Cir.1997) (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367). "Conduct that is 'merely offensive' and 'not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.'" *Torres,* 116 F.3d at 629 (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367). "Thus, as a general rule, episodic, isolated incidents of harassment do not give rise to a Title VII claim; rather the incidents must be sufficiently continuous and concerted in order to be deemed pervasive." *Abidekun,* 1998 WL 296372 * 6 (quotations and citations omitted).

▆▆▆ Khan admits that she was never discriminated against in any of her previous years of employment with A & F. Khan Dep. at 255. Accordingly, as a matter of law, this Court determines that Khan's single allegation of discrimination does not give rise to a claim of hostile work environment and summary judgment for the defendants is granted on this issue. *See, e.g., Abidekun,* 1998 WL

296372 (summary judgment granted where plaintiff made no showing of pervasive or continuous conduct).

### IV. *Retaliation*

▆▆▆ Title VII forbids an employer to retaliate against an employee for engaging in protected activity. *See* 42 U.S.C. § 2000e–3(a). Khan cannot establish a *prima facie* case under a retaliation rubric. To establish a *prima facie* claim for retaliation, Khan would need to show that she (i) participated in a protected activity known to the defendants; (ii) suffered an adverse employment action; and (iii) that there is a causal connection between the protected activity and the adverse employment action. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir. 1995). In analyzing her retaliation claim, this Court uses the same tripartite *McDonnell Douglas* analysis discussed, *supra,* in Section II, A. *Garber v. The New York City Police Dep't.,* 1998 WL 514222, 1998 U.S.App. LEXIS 20181 (2d Cir. June 12, 1998).

### A. *The Probation Memorandum*

▆▆▆ Khan is unable to satisfy the causation element of her retaliation claim. She avers that she received the probation memorandum from Moore as a result of her complaint about Williams. A & F responds that Moore placed Khan on probation because of the "sensormatic incident." Once A & F puts forward a legitimate reason for placing Khan on probation, she must reply by showing that reason to be "merely a pretext for retaliation and that the employer's action was prompted by an impermissible motive." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995).

Here, Khan is unable to show that A & F's stated reason for placing her on probation was a pretext for retaliation. Moore testified that he gave Khan the memorandum because of the "sensormatic" incident. Moore Dep. at 72. Khan has not proffered any motive for why Moore would want to retaliate against her. She admits that she did not tell him about her complaint regarding Williams and points to no evidence in the record that

would demonstrate that Moore knew about the complaint. Nor is there evidence that Moore even knew Williams prior to placing Khan on probation. Khan's conclusory assertion that she was disciplined due to her complaint about Williams is insufficient to show pretext. *See Ying Jing Gan v. City of York,* 996 F.2d 522, 532 (2d Cir.1993) (When construing facts in the summary judgment context, a plaintiff must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."); *Moorer v. Grumman Aerospace Corp.,* 964 F.Supp. 665, 674–75 (E.D.N.Y. 1997) (conclusory allegations not sufficient to create genuine issue of material fact).

Khan also points to her exemplary record prior to her complaint as evidence that the sensormatic incident was pretextual. She states that before the incident with Williams, she had never received a disciplinary memorandum and disputes the content of the probation memorandum she did receive. On this point, *Moorer* is instructive:

> An employee's opinion that a performance review was unfair, supported only by her own conclusory statements to that effect, cannot bootstrap her claims into a Title VII claim of discrimination. Nor can prior good evaluations of the plaintiff's work performance alone establish that later unsatisfactory evaluations are pretext for unlawful discrimination.

964 F.Supp. at 674 (internal quotations and citations omitted).

Khan also claims that the sensormatic incident—A & F's purported reason for placing her on probation—did not take place and that Carriero lied when he told Moore that the event occurred. *See* Khan Dec. 2, 1998 Aff. ¶¶ 17, 19. However, even assuming *arguendo* that Carriero did lie to Moore about the incident, Khan has not alleged that Moore knew, or should have known, that Carriero's account was false. As such, Moore's testimony stands uncontradicted; he placed Khan on probation based on his knowledge of the sensormatic incident.

There is nothing in the record to support a finding that he did not believe the incident occurred and, accordingly, Khan cannot demonstrate pretext.[4]

### B. The Failure to Promote

■ In order for Khan to establish a prima facie case of employment discrimination due to A & F's failure to promote her, she must show: (1) that she belongs to a protected class; (2) that she applied for and was qualified for the position sought; (3) that she was not given the position; and (4) that the position sought was ultimately filled by a person not in the protected class or that the position remained open and the employer continued to seek applicants. *Little v. State of New York,* 1998 WL 306545 (E.D.N.Y. 1998).

Here, Khan cannot satisfy the final element of her prima facie case—that the position sought was ultimately filled by a person not in the protected class or remained open. Ramsey's uncontradicted testimony is that there have been no open Investigator positions (the position for which Khan sought promotion) at A & F between the time Khan complained and the filing of this case. As such, Khan cannot show that she has been disadvantaged in comparison to other A & F employees by her failure to be promoted and that claim fails. *See, e.g., Little* at *4 (failure to promote claim dismissed for plaintiff's failure to demonstrate that his employer continued to seek applicant for a position after he was not promoted).

### V. Pendent State Law Claims

■ Plaintiff's claims under N.Y.Exec Law § 296 *et seq.* are dismissed. As the Second Circuit recently observed, "[w]e have frequently noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." *Torres v. Pisano,* 116 F.3d 625, 629 n. 1 (2d Cir.1997). *See also Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714–715 and 716 n. 6 (2d Cir.1996) (same); *Ramos v. City of New York,* 1997 WL

---

**4.** Because Khan cannot establish a causal connection between her complaint about Williams and Moore's decision to place her on probation this Court does not address the "protected activity" and "adverse employment action" prongs of Khan's retaliation claim.

410493, *5 (S.D.N.Y.1997) (same); *Owens v. Waldorf–Astoria Corp.,* 1997 WL 251556 (S.D.N.Y.1997) (same). Plaintiff's inability to establish a *prima facie* case under Title VII is fatal to her claims under state law.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted and summary judgment on all claims is awarded to the defendant.

**SO ORDERED.**