J. Alix ZEPHYR

v.

ORTHO McNEIL PHARMACEUTICAL and M. Machan Littleton.

No. 3:97cv2702 (AHN).

United States District Court, D. Connecticut.

July 29, 1999.

Eroll V. Skyers, Skyers & Skyers, Bridgeport, CT, for Plaintiff.

Gary A. MacMillan, MacMillan & Lucas, Westport, CT, for Defendants.

*RULING ON MOTION FOR*
*SUMMARY JUDGMENT*

NEVAS, District Judge.

The plaintiff, J. Alix Zephyr ("Zephyr"), brings this action against the defendants, Ortho McNeil Pharmaceutical ("OMP") and M. Machan Littleton ("Littleton"), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 ("Title VII"), the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a–60 ("CFEPA"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (" § 1981").

Now pending before the Court is the defendants' Motion for Summary Judgment. For the reasons that follow, the motion [doc. # 21] is GRANTED.

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Rule 56(c); *see Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (citation and internal quotation marks omitted). The party seeking summary judgment bears the burden of showing that no genuine dispute about an issue of material fact exists. *See Adickes*

*v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (internal quotation marks omitted). In assessing the record to determine whether a genuine dispute as to a material fact exists, a court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) (citation omitted). A district court must be especially cautious about granting summary judgment in an employment discrimination case when the employer's intent is at issue. *See Kerzer*, 156 F.3d at 400.

## FACTS

The following facts are undisputed.

Zephyr is an African American male who worked as a sales representative for OMP from September 16, 1991 to May 21, 1996. (*See* Local Rule 9(c)(1) Statement ¶ 1 [hereinafter "Def.'s Stat."]; Pl.'s Am. Local 9(c)(2) Statement ¶ 1 [hereinafter "Pl.'s Am. Stat."].) In January 1995, Littleton became Zephyr's supervisor when he assumed the position of sales manager for the district in which Zephyr worked. (*See* Def.'s Stat. ¶ 4; Pl.'s Am. Stat. ¶ 4.) At the time, that district was ranked as OMP's

"lowest-performing" district in the United States. (*See* Def.'s Stat. ¶ 5; Pl.'s Am. Stat. ¶ 5.)

Zephyr primarily sold oral contraceptives for OMP. (*See* Def.'s Stat. ¶ 8; Pl.'s Am. Stat. ¶ 8.) In 1995, OMP's national average market share for the sale of oral contraceptives was about 38%, while Zephyr's territory's market share was about 31%. (*See* Def.'s Stat. ¶¶ 8–9; Pl.'s Am. Stat. ¶¶ 8–9.)

On five separate days between September 1995 and January 1996, Littleton accompanied Zephyr as he worked his sales territory and provided him with feedback on his performance and suggestions on how to improve his sales technique. (*See* Def.'s Stat. ¶ 7; Pl.'s Am. Stat. ¶ 7.) Zephyr only agreed with some, but not all, of Littleton's suggestions. (*See* Def.'s Stat. ¶ 10; Pl.'s Am. Stat. ¶ 10.) Subsequent to his field evaluations, Littleton rated Zephyr's performance as "Development Needed." (*See* Def.'s Stat. ¶ 11; Pl.'s Am. Stat. ¶ 11.) As a result of this rating, OMP suspended payment of certain incentive compensation that OMP had paid Zephyr in the past when he received higher ratings. (*See* Def.'s Stat. ¶ 13; Pl.'s Am. Stat. ¶ 13.)

In comparison to previous district managers for the district in which Zephyr worked, Littleton gave lower performance evaluations to seven of the thirteen sales representatives in the district. (*See* Def.'s Stat.. ¶ 12; Pl.'s Am. Stat. ¶ 12.) Including Zephyr, Littleton rated four of those seven individuals as "Development Needed." (*See* Def.'s Stat. ¶ 12; Pl.'s Am. Stat. ¶ 12.) All six of the, other individuals who received downgraded evaluations were white. (*See* Def.'s Stat. ¶ 12; Pl.'s Am. Stat. ¶ 12.) Moreover, Littleton never made any racially disparaging remarks to Zephyr. (*See* Def.'s Stat. ¶ 17; Pl.'s Am. Stat. ¶ 17).

At the end of March 1996, Littleton transferred to another district and William C. Long ("Long"), an African American male, became the manager for the district in which Zephyr worked. (*See* Def.'s Stat. ¶ 14; Pl.'s Am. Stat. ¶ 14.) As Littleton had, Long accompanied Zephyr as he worked his sales territory and evaluated him as needing improvement in some areas of his sales technique. (*See* Def.'s Stat. ¶ 15; Pl.'s Am. Stat. ¶ 15.)

On May 21, 1996, Zephyr resigned from his position at OMP. (*See* Def.'s Stat. ¶ 2; Pl.'s Am. Stat. ¶ 2.) At that time, he had accepted an offer of employment as a sales representative for Parke–Davis Pharmaceutical ("PDP"). (*See* Def.'s Stat. ¶ 3; Pl.'s Am. Stat. ¶ 3.) Zephyr's compensation at OMP in 1996 was $37,500 plus commissions. (*See* Def.'s Stat. ¶ 3; Pl.'s Am. Stat. ¶ 3.) His new position at PDP paid him $51,500 plus commissions. (*See* Def.'s Stat. ¶ 3; Pl.'s Am. Stat. ¶ 3.)

On December 16, 1997, Zephyr filed this action. His amended complaint alleges three causes of action. Zephyr claims that he was not given certain financial benefits, (*see* Am. Compl. § 26), and was forced to leave his employment at OMP and seek another job, (*see* Am. Compl. § 27), due to racial discrimination and harassment in violation of Title VII ("Count One"), CFEPA ("Count Two"), and § 1981 ("Count Three").

## DISCUSSION

OMP moves for summary judgment on all three counts of Zephyr's complaint, while Littleton moves for summary judgment on the only counts remaining against him, Counts Two and Three.[1] In general, the defendants argue that all of Zephyr's claims must fail as a matter of law because he cannot establish (1) that the defendants effected any adverse employment actions against him or (2) that any of the alleged actions occurred because of his race.

1. On May 14, 1998, the Court granted absent objection Littleton's motion to dismiss the Title VII claim against him as an individual.

■ The legal standard used to analyze Title VII liability applies to both CFEPA, *see Proctor v. MCI Communications Corp.*, 19 F.Supp.2d 11, 14 n. 1 (D.Conn. 1998) (noting Title VII standard applies to CFEPA claims), and § 1981, *see McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (applying same framework to claim of discriminatory discharge in violation of Title VII and § 1981). Therefore, as the parties have not argued and the Court does not discern any relevant differences between Zephyr's claims for the purposes of the current motion, the Court will adjudicate all three claims together.

Where, as here, a plaintiff alleges disparate treatment, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as interpreted by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), applies. *See Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir.1999) (citation omitted).

The Supreme Court has described the basic allocation of burdens and order of presentation applicable to a *McDonnell Douglas* disparate treatment analysis as follows:

First, the plaintiff has the burden. of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine*, 450 U.S. at 252–53, 101 S.Ct. 1089 (citations and internal quotation marks omitted); *see also Kerzer*, 156 F.3d at 401. Although the burdens of production shift during this analysis, the "plaintiff at all times bears the ultimate burden of persuasion." *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742 (citations and internal quotation marks omitted).

■ To establish a *prima facie* case of race discrimination, a plaintiff must prove that (1) he belonged to a protected group, (2) he was qualified for his position, (3) he suffered an adverse employment decision, and (4) the decision occurred under circumstances giving rise to an inference of discrimination based on his race. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir.1998); *McLee*, 109 F.3d at 134; *Proctor*, 19 F.Supp.2d at 14. An inference of race discrimination may be shown by various types of proof depending upon the particulars of the case. *See McDonnell Douglas*, 411 U.S. at 802 & n. 13, 93 S.Ct. 1817. "The burden of establishing a *prima facie* case of disparate treatment is not onerous[,]" however, these elements "must [be] prove[n] by a preponderance of the evidence." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

Here, although not entirely clear from the Amended Complaint, Zephyr appears to allege that he suffered two distinct adverse employment decisions. One, that he was not provided certain financial incentives on a timely basis and, two, that he was constructively discharged. In regard to the first claim, the defendants argue that no evidence exists that supports Zephyr's claim that he did not receive the financial incentives due to racial discrimination. In regard to the second claim, the defendants argue that Zephyr cannot establish the elements of a *prima facie* case of race discrimination because he cannot show that he was constructively discharged. The Court agrees with both of these arguments.

### I. Denial of Financial Incentives

■ In this case, the undisputed evidence shows that Zephyr cannot establish

a *prima facie* case of discrimination in regard to OMP denying him certain financial incentives. Assuming *arguendo* that the denial of the financial incentives constituted an adverse employment action, the Court concludes that Zephyr cannot as a matter of law establish by a preponderance of the evidence the fourth element of a *prima facie* case, *i.e.*, that the denial of the incentives occurred under circumstances that give rise to an inference of discrimination.

The undisputed facts reveal the following. Zephyr was only one of seven (out of thirteen) employees who received lower evaluations from Littleton than they had received from previous managers. The other six downgraded employees were all white. In addition, including Zephyr, Littleton gave four of those employees "Development Needed" ratings. This "Development Needed" rating of Zephyr caused OMP to not provide him the financial incentives that they had given him in previous years when he had been rated "Achieves Job Standards." Thus, as there is no indication in the record that any other representative rated "Development Needed" received a financial incentive, Zephyr's claim can only be most favorably construed by interpreting it to allege that he should not have been rated "Development Needed."

Zephyr argues that an inference of unlawful discrimination can arise from that fact that Littleton's evaluation of him as "Development Needed" was objectively unfair and unreasonable. He contends that based on the statistical ranking of his sales, he should not have been rated "Development Needed" as he had better sales figures than a majority of his co-workers. While conceding that Littleton made no racially based remarks against him personally,[2] he asserts that the statistical evidence alone is sufficient to raise an inference of unlawful discrimination. The Court is not persuaded.

Zephyr's argument assumes that employees' ratings at OMP are based solely on their performance as measured by sales. The undisputed facts show, though, that during the relevant time period OMP's managers, such as Littleton, accompanied salespersons into the field and based their evaluations at least in part on their field observations. (*See* Aff. M. Machan Littleton Exs. D, E, & F (reproducing evaluations of other sales representatives whose performance, like Zephyr's, was rated on market share results, volume goals, selling skills as demonstrated in workwith sessions, and processes, such as use of computer data and administrative duties) [hereinafter "Littleton Aff."].) Indeed, the Annual Performance Appraisal of Zephyr dated April 16, 1996 clearly indicates on its face that "Region Ranking" accounts for seventy percent of the appraisal and "Selling Process" accounts for thirty percent. (*See* Littleton Aff. Ex. C at 2.) The fact that representatives were rated on criteria other than sales figures alone significantly undercuts Zephyr's statistical-ranking analysis. Further, Littleton giving Zephyr a poor evaluation because he did not utilize the selling processes recommended by OMP is consistent with a focus on sales as OMP developed those processes in order to facilitate their salespersons in generating sales. Thus, the mere fact that part of the criteria Littleton used to evaluate sales representatives suggests that Zephyr should have received a higher rating is not sufficient to give rise to an inference of discrimination.

Moreover, even assuming that employee ratings should have been based solely on their sales figures-a claim the Court does not believe the undisputed facts support-there is no evidence from which a reasonable fact finder could infer that Zephyr received his allegedly inappropriate evaluation because of his race. Littleton downgraded six other employees, all of whom

---

**2.** The Court notes that, although not conceded by Zephyr, no evidence exists of Little-

ton making any explicitly racially based remarks to anyone else.

were white and three of whom also received "Development Needed" evaluations. No evidence has been presented regarding whether any other African Americans were in Zephyr's district and, if there were, what ratings they received. Nor has any evidence been developed regarding the race and ratings of employees who had similar statistical rankings to Zephyr. As a result, other than the fact that Zephyr is an African American, there is simply no reason to infer that Littleton rated him "Development Needed" due to racial animus or bias. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994) (recognizing that evidence showing more favorable treatment of employees not in a protected group may give rise to inference of discrimination); *see also Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir.1993) (finding inference exists where in a supposed "reduction in force," the plaintiff, a black, was the only person to lose her job). Assuming the statistical rankings were the only relevant criteria, *Washington* is still distinguishable from this case because here, Zephyr has only developed evidence that he was disfavorably treated, not that whites were more favorably treated. Although the nonmovant, Zephyr still has to "make a sufficient showing on [the] essential element[s] of [his] case with respect to which [he] has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Therefore, while a plaintiff's burden to establish a *prima facie* case is not onerous, the bare facts of this case cannot be considered sufficient.[3]

**3.** The Second Circuit, in accord with other circuits, adheres to the position that the burden of establishing a *prima facie* case is "minimal," "de minimis," or "not onerous." *See Fisher v. Vassar College*, 114 F.3d 1332, 1340 n. 7 (2d Cir.1997) (en banc) (collecting cases), *cert. denied*, — U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). Indeed, the Second Circuit has stated that in "our diverse workplace, virtually any decision in which one employment applicant is chosen from a pool of qualified candidates will support a slew of prima facie cases of discrimination[,]" *id.* at 1337, and that in the employment context a "plaintiff's burden to produce a *prima facie* case is substantially less onerous than the conventional obligation to produce evidence that reasonably supports a finding on all the elements of the claim[,]" *id.* at 1340. However, in *Burdine,* the Supreme Court stated: "The burden of establishing a *prima facie* case of disparate treatment is not onerous. The plaintiff *must prove by a preponderance of the evidence* that she applied for an available position for which she was qualified, but was rejected under circumstances giving rise to an inference of unlawful discrimination." 450 U.S. at 253, 101 S.Ct. 1089 (emphasis added) (footnote omitted); *see also Fisher*, 114 F.3d at 1363 n. 1 (Newman, J., dissenting). This plain statement appears to require that the plaintiff must establish the elements of a *prima facie* case by a preponderance of the evidence. The "not onerous" language is most clearly read to indicate that the type and quantity of evidence the plaintiff must amass is not substantial, although that evidence must still be established in a way that satisfies a preponderance standard. A characterization of this requirement as simply "minimal" or "de minimis" runs the risk of misleading careless litigants or courts as well as eviscerating the value of the *McDonnell Douglas* burden-shifting analysis. *Cf. Lapsley v. Columbia Univ.-College of Physicians and Surgeons,* 999 F.Supp. 506, 514–15 (S.D.N.Y. 1998) (criticizing the *McDonnell Douglas* framework because, *inter alia,* courts often mechanically apply, assume or disregard the first two steps of the analysis). Further, the relationship of this requirement to the standard for summary judgment is unclear. This is especially so for a cause of action like Zephyr's denial of financial incentives claim to which the traditional four factors the Supreme Court first set forth in *McDonnell Douglas* do not easily translate. Based on the relevant Supreme Court case law, this Court believes, perhaps contrary to *Fisher*, that a plaintiff must establish by a preponderance of the evidence a factual basis upon which reasonable minds could differ over whether an inference of unlawful discrimination arises. This interpretation is consistent with the Supreme Court's recognition that the "plaintiff at all times bears the burden of persuasion." *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742. Further, a less stringent interpretation means that the *prima facie* case becomes, in essence, merely a checklist relevant solely at the motion to dismiss stage and essentially irrelevant to a motion for summary judgment. Certainly, none of the Supreme Court's pronouncements in this area suggest such a limited role for the *prima facie* case. Here, this Court believes that Zephyr cannot satisfy this requirement when the fact that Littleton based his evaluations on more than just sales figures

For similar reasons, even assuming that Zephyr could establish a *prima facie* case, he cannot as a matter of law show that the defendants' proffered reason for denying him his financial incentives, *i.e.*, that based on Littleton's field observations he believed Zephyr should be rated "Development Needed," was a pretext for racial discrimination.

In order to establish that the employer's reason for termination was pretextual, Zephyr must show both "that the reason was false, and that discrimination was the real reason." *Hicks*, 509 U.S. at 515, 113 S.Ct. 2742. At the summary judgment stage, this means that he "must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging h[im] is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Kerzer*, 156 F.3d at 401 (citation and internal quotation marks omitted). A "plaintiff may prevail only if an employer's proffered reasons are shown to be a pretext for discrimination, either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction—or both." *Fisher v. Vassar College*, 114 F.3d 1332, 1339 (2d Cir.1997) (en banc), *cert. denied*, — U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). However, a plaintiff cannot survive a motion for summary judgment merely by asserting that intent is at issue, instead, he must present "concrete particulars" that substantiate his claim of discrimination. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985).

Here, Zephyr has failed to raise a genuine issue of material fact through either direct, statistical or circumstantial evidence that OMP's stated reason for the denial of the financial incentives was a pretext for racial discrimination. He has produced no credible evidence that OMP generally evaluates its salespersons solely on their sales figures. As noted above, Zephyr's appraisal form clearly indicates that almost one-third of his rating is based on "Selling Process." (*See* Littleton Aff. Ex. C at 2); *see also Charrette v. S.M. Flickinger Co., Inc.*, 806 F.Supp. 1045 (N.D.N.Y.1992) (finding comparative evidence of little value in showing pretext where evidence lacked proper foundation in regard to how defendant interpreted evaluations of plaintiff).

Nor has Zephyr produced evidence indicating that Littleton, contrary to his field evaluations, actually believed Zephyr's sales techniques did not need improvement. Indeed, Littleton's undisputed affidavit avers that he believed that because Zephyr's territory was a "high-cash" area not controlled by managed care organizations that Zephyr should have been producing results above OMP's national average because such territories were typically OMP's strongest in terms of market percentage. (*See* Littleton Aff. ¶ 9.) Littleton apprised Zephyr of this viewpoint in his January 26, 1996 evaluation. (*See* Littleton Aff. Ex. B at 1 (stating "based on your marketplace and your relatively low raw OC share, your territory results should be better than you are currently achieving").) Littleton's undisputed affidavit and his January 1996 evaluation of Zephyr both state that he believed Zephyr needed to increase his call production and coverage, and improve his selling skills by using the techniques OMP recommends. (*See* Littleton Aff. ¶ 15; *id.* Ex. B. at 2.) Zephyr's own disagreement with these suggestions, (*see* Dep. J. Alix Zephyr at 35–37 [hereinafter "Zephyr Dep."]; Aff. Alix Zephyr Opp'n Defs.' Mot. Summ. J. Ex. 6 [hereinafter "Zephyr Aff."]), is not adequate to raise a genuine issue of material fact in

---

is considered, nor can he satisfy it even when his claim that only sales figures mattered is credited. In any event, this issue is not dispositive of the Court's opinion in this case

because, as explained *infra*, the Court also holds that Zephyr cannot demonstrate pretext.

regard to whether Littleton's proffered reasons for rating him "Development Needed" were a pretext for discrimination. *Cf. Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir.1980) ("Plaintiff does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his superiors.").

▮ Lastly, the fact that Zephyr received positive evaluations in the past is not dispositive. *See Khan v. Abercrombie & Fitch, Inc.,* 35 F.Supp.2d 272, 278 (E.D.N.Y.1999) ("'Nor can prior good evaluations of the plaintiff's work performance alone establish that later unsatisfactory evaluations are a pretext for unlawful discrimination.'" (quoting *Moorer v. Grumman Aerospace Corp.,* 964 F.Supp. 665, 674 (E.D.N.Y.1997))).

Moreover, even assuming that Littleton's proffered reason was false, Zephyr has failed to raise a genuine issue of material fact in regard to whether the proffered reason reflects stereotypical, discriminatory thinking or whether other evidence in the record supports the claim of discrimination, such as race-related remarks or actions. *See Hollander,* 172 F.3d at 201. The allegedly pretextual reason for denying Zephyr financial incentives, *i.e.,* that Littleton felt his sales techniques needed improvement, does not itself suggest racially-motivated bias or discrimination.

Similarly, no other evidence in the record suggests racial discrimination. Zephyr admits that no racially-based remarks were made to him directly. (*See, e.g.,* Zephyr Dep. at 57–58.) Moreover, based on an extensive review of the record, the Court cannot find any evidence that suggests that racial animus motivated either Littleton or OMP. Indeed, assuming that Littleton's evaluation of Zephyr was a pretext, the developed record in this case exemplifies the Second Circuit's recognition that:

> discrimination does not lurk behind every inaccurate statement. Individual decision-makers may intentionally dis-

semble in order to hide a reason that is non-discriminatory but unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite or personal hostility.... In short, the fact that the proffered reason was false does not necessarily mean that the true motive was the illegal one argued by the plaintiff.

*Fisher,* 114 F.3d at 1337–38. Here, construing all the evidence in favor of Zephyr, the absolute most the record demonstrates is that Littleton was highly critical and demanding of many of his employees, not just Zephyr, and that he treated many of them in a condescending manner.

The Court holds that Zephyr's claim of racially discriminatory denial of financial incentives is without merit. Other than the fact that Zephyr is an African American, the record is devoid of even a scintilla of evidence that racial animus motivated the actions of Littleton and OMP. *Cf. Yusuf v. Vassar College,* 35 F.3d 709, 714 (2d Cir.1994) (affirming dismissal of a § 1981 claim because, *inter alia,* plaintiff "offered no reason to suspect that his being found guilty of sexual harassment had anything to due with his race, other than his assertion that the panel members were white and that he is Bengali"). While the Court is cognizant of the admonition that courts must be especially cautious about granting summary judgment in an employment discrimination case, *see Kerzer,* 156 F.3d at 400, this case presents the Court with nothing more than pure and legally inadequate speculation that racial animus motivated the alleged discriminatory treatment of the plaintiff, *cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (stating "opponent must do more than simply show that there is some metaphysical doubt as to the material facts" (citations omitted)).

## II. *Constructive Discharge*

Here, the undisputed facts show that as a matter of law Zephyr cannot establish a

*prima facie* case of discriminatory constructive discharge. Specifically, Zephyr cannot establish that he was constructively discharged and, therefore, cannot show that he had an adverse employment action taken against him. Moreover, even assuming that Zephyr could establish that he was constructively discharged, he cannot show either that his discharge occurred under circumstances giving rise to an inference of discrimination or, assuming he establishes a *prima facie* case, that the defendants' proffered reasons for their actions were a pretext for racial discrimination.

 The constructive discharge doctrine applies to all forms of employment discrimination and has been recognized by Connecticut law. *See Mullins v. Pfizer, Inc.*, 828 F.Supp. 139, 144 (D.Conn. 1993), *rev'd in part on other grounds*, 23 F.3d 663 (2d Cir.1994). In order to establish a claim of constructive discharge, a plaintiff must show that the "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir.1985) (citations and internal quotation marks omitted). Further, the "employer must have deliberately made an employee's working conditions so intolerable as to force the resignation." *Id.* (citations and internal quotation marks omitted). A claim of constructive discharge cannot survive a motion for summary judgment based only on the employee's subjective beliefs about his working conditions. Instead, the employee must present some objective evidence of intolerable working conditions. *See Mullins*, 828 F.Supp. at 144.

Here, Zephyr alleges that he was forced to leave OMP because he received below average performance evaluations and he was given an unreasonable market share goal to achieve within six months. (*See* Pl.'s Mem. Law Opp'n Defs.' Mot. Summ. J. at 3.) The Court finds that when these alleged facts are placed in the context of

the undisputed facts of this case, they are insufficient as a matter of law for Zephyr's constructive discharge claim to survive the current motion for summary judgment.

As an initial matter, the Court recognizes that Zephyr's contention that he was given an unreasonable market share goal to achieve is premised on a factual inaccuracy. Zephyr argues that he was given six months to raise his overall market share percentage in his district from 31% to the national average for OMP of 38%. However, a careful reading of the record reveals that Littleton gave Zephyr a "performance warning (verbal warning) that if [his] marketshare *trends* in each of [OMP's] key product categories do not exceed the national increases … and [he] d[oes] not improve [his] territory processes, it will lead to [him] being placed on formal warning." (*See* Zephyr Aff. Ex. 5 at 1 (emphasis added).) Thus, it is clear that Littleton's goal for Zephyr was not to have him attain a greater total market share in his area than the national average, but only for him to show a greater rate of increase in market share than the national average increase. The actual goal obviously constitutes a less onerous and intolerable working condition than the goal Zephyr claims he had to satisfy.

 In general, the denial of a promotion, criticism of an employee's work performance, or an employee's dissatisfaction with his job responsibilities and assignments do not suffice to establish a claim of constructive discharge. *See Ternullo v. Reno*, 8 F.Supp.2d 186, 193 (N.D.N.Y.1998) (citations omitted); *see also Muller v. United States Steel Corp.*, 509 F.2d 923, 929 (10th Cir.1975) (holding combination of discriminatory failure to promote and unfavorable job assignments inadequate to establish constructive discharge). Thus, Zephyr's claim that he felt compelled to resign because of his poor evaluations is not well-taken.

To the extent Zephyr's claim is predicated on the decision to deny him financial

incentives which effectively reduced his pay for the year, this assertion is also insufficient to show constructive discharge. *See Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (5th Cir.1980) (stating that "we believe that discrimination manifesting itself in the form of unequal pay cannot, alone, be sufficient to support a finding of constructive discharge"). Zephyr's reliance on the Third Circuit's decision in *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885 (3d Cir.1984) is misplaced. The plaintiff in *Goss* "was told to either sign a writing accepting [a lower-paying] assignment or resign." 747 F.2d at 888. Here, in contrast, Zephyr was not forced to choose between lower pay or resignation, but instead, was denied financial incentives due to a poor evaluation and alerted in January 1996 that he needed to improve both his percentage increase in market share and his sales processes to avoid being placed on formal warning and probation. Moreover, on May 10, 1996, Zephyr was informed that he would not be placed on formal warning, but instead, was in a "holding pattern" until the end of June 1996 when a more thorough evaluation of his progress could be made. (*See* Zephyr Aff. Ex. 3 at 2.) Soon thereafter, on May 21, 1996, Zephyr resigned. (*See* Zephyr Aff. Ex. 11.)

In combination with the factors discussed above, two other undisputed facts are fatal to Zephyr's constructive discharge claim. First, Littleton, the supervisor Zephyr alleges was the primary source of the discriminatory conduct against him, was replaced due to a realignment of OMP's territories by Long, an African American. (*See* Aff. William C. Long Supp. Defs.' Mot. Summ. J. ¶ 4 [hereinafter "Aff. Long"]; Defs.' Stat. ¶ 14.) Long replaced Littleton at least by April 1, 1996 when he conducted a field evaluation of Zephyr.[4] (*See* Aff. Long Ex. 1.) This undisputed fact substantially weakens Zephyr's claim of constructive discharge. *See Ternullo,* 8 F.Supp.2d at 193 ("Plaintiff's [constructive discharge] case is significantly undercut by the fact that the source of her problems, [the defendant], was removed nearly two months prior to [plaintiff] submitting her resignation."); *see also Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1465 (9th Cir.1994) (finding no constructive discharge where allegedly biased supervisor was fired two and one-half months prior to plaintiff's resignation, and quoting with approval *Brady v. Elixir Industries,* 196 Cal.App.3d 1299, 242 Cal.Rptr. 324, 328 (Cal.App. 4 Dist. 1987) for proposition that to support constructive discharge claim alleged "harassment must be intolerable 'at the time of the employee's resignation' ").

Second, when Zephyr resigned from OMP he had already accepted a salesperson position with a rival pharmaceutical company that paid a significantly higher base salary ($51,500 plus commissions as opposed to $37,500 plus commissions). While not relevant to his working conditions at OMP, this undisputed fact is pertinent to why Zephyr left OMP and further undermines his claim of constructive discharge.

Based on the combination of all of these factors, the Court holds that Zephyr cannot establish that he was constructively discharged and, therefore, he cannot make out a *prima facie* case of race discrimination because he cannot show an adverse employment action.

 Moreover, even assuming that Zephyr could establish that he was constructively discharged, based on the undisputed facts of this case he cannot show either that his discharge occurred under circumstances giving rise to an inference of discrimination or, assuming he could establish a *prima facie* case, that the de-

---

**4.** Zephyr argues that Long's evaluation of Zephyr's selling processes, which was generally consistent with Littleton's evaluation, resulted from Long merely continuing a trend set in motion by Littleton. However, the record is devoid of any evidence to support this assertion. In any event, the issue is not dispositive.

fendants' proffered reasons for their alleged discriminatory acts were pretextual. As discussed in relation to Zephyr's discrimination claim based on a denial of financial incentives, the record in this case does not contain any evidence from which a reasonable fact finder could infer that racial animus motivated the defendants' actions. The bases for Zephyr's constructive discharge claim, his below average performance evaluations and his increase in market share goal, do not raise any issues or facts, different from his denial of financial incentives claim, that suggest race-based animus. Therefore, Zephyr cannot make out a *prima facie* case of race discrimination based on constructive discharge because he cannot show that his alleged discharge occurred under circumstances warranting an inference of racial discrimination.

Finally, even assuming Zephyr could establish a *prima facie* case, he cannot "establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the [defendants'] reason for [constructively] discharging h[im] is false and as to whether it is more likely that a discriminatory reason motivated the [defendants] to make the adverse employment decision." *Kerzer*, 156 F.3d at 401 (citation and internal quotation marks omitted). Littleton's proffered non-discriminatory reason for evaluating Zephyr as "Development Needed" and for giving Zephyr a particular market share .increase goal was that he believed that "based on Zephyr's marketplace and [his] relatively low raw OC share, [his] territory results should be better than [he was] currently achieving." (*See* Aff. Zephyr Ex. 5 at 1 (reproducing evaluation by Littleton).) As before, Zephyr's own statistical analysis of his productivity for OMP without a showing that OMP's evaluations were based exclusively on such analyses does not create a genuine issue of material fact in regard to whether Littleton's proffered reason for his actions is false. Further, Zephyr cannot show that "either ... the pretext finding itself points

to discrimination or ... other evidence in the record points in that direction." *Fisher*, 114 F.3d at 1339. The record contains no evidence that even implies that Zephyr's race played any role in the defendants' decisions. Neither Zephyr's evaluation nor the goals he was given reflects stereotypical, discriminatory thinking, and Zephyr admits no race-related remarks were made to him. *See Hollander*, 172 F.3d at 201.

The Court holds that Zephyr's racial discrimination constructive discharge claim must fail as a matter of law. Zephyr has not raised any genuine issues of material fact that preclude summary judgment. Even when construed in Zephyr's favor, the facts in this case do not evince any basis from which a reasonable fact finder could determine that Zephyr was either constructively discharged or that his alleged constructive discharge occurred due to his race. As before, the Court is cognizant of the admonition that courts must be especially cautious about granting summary judgment in an employment discrimination case. *See Kerzer*, 156 F.3d at 400. However, the record in this case provides only unsubstantiable speculation that the defendants discriminated against the plaintiff because of his race.

## CONCLUSION

For the reasons stated above, the defendants' Motion for Summary Judgment [doc. # 21] is GRANTED. The Clerk is ordered to CLOSE this case.